UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61016-CIV-ROSENBAUM/SELTZER

DAVID WRIGHT, individually and on behalf
of a class of similarly situated individuals,

        Plaintiff,

v.

THE BERKLEY GROUP, INC., a Florida
corporation, and VACATION OWNERSHIP
MARKETING TOURS, INC., a Florida
corporation,

        Defendants.
_____/

**ORDER ON THE PARTIES' JOINT MOTION TO TRANSFER VENUE**

This matter is before the Court upon the parties' Joint Motion to Transfer Venue [D.E. 61] ("Motion to Transfer"). The Court has reviewed the Motion to Transfer and the record. After careful consideration, the Court now grants the Joint Motion to Transfer Venue [D.E. 61] for the reasons set forth below.

*I.  Background*

On October 29, 2012, Plaintiff David Wright filed a two-count Amended Class Action Complaint ("Amended Complaint") against Defendants The Berkley Group, Inc. ("Berkley"), and Vacation Ownership Marketing Tours, Inc. ("Vacation Ownership"). *See* D.E. 32. According to the Amended Complaint, Vacation Ownership is the primary marketing vendor for Berkley, a corporation that develops and sells vacation timeshares and cruise trips. *Id.* at ¶¶ 6, 10.[1] Plaintiff

---

[1] Both Berkley and Vacation Ownership are Florida corporations. *See* D.E. 32 at ¶¶ 5-6.

alleges that Defendants are collectively responsible for "making unsolicited telemarketing calls *en masse* that promise valuable consideration, such as a 'free cruise,' in exchange for answering a series of survey questions, and then not providing that consideration." *See id.* at 1. In particular, Plaintiff contends that Defendants

> intentionally and systematically placed (or directed to be placed on their behalf) robocalls to thousands of consumers nationwide under the pretense that they were conducting a public opinion poll on behalf of "Political Opinions of America." Defendants effectuated and placed these phone calls using automatic dialing equipment without first obtaining consumers' prior express consent to do so. Through its calls, Defendants promised consideration, such as a free cruise, in exchange for call recipients answering a series of questions. However, Defendants' political polling front is little more than a bait and switch to acquire fees later in the call. The "results" of the political polling are not shared or used in any manner, and serve no purpose but to keep consumers on the phone. In that vein, after consumers answer the questions, Defendants do not provide the promised consideration in any form.

*Id.* at ¶ 1. Plaintiff argues that by allegedly calling consumers without permission, Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). *Id.* at ¶ 2. In addition, he avers that Defendants breached a contract that was formed when Plaintiff agreed to answer survey questions in exchange for a free cruise. *Id.* After Plaintiff answered the survey, he alleges, he was transferred to an operator who claimed to represent Caribbean Cruise Lines, Inc., but did not provide Plaintiff with a free cruise. *Id.* at ¶ 25. Plaintiff informs the Court that he brings this action "on his own behalf and on behalf of [] two classes of similarly situated individuals . . . ." *Id.* at ¶¶ 38-40.

On January 29, 2013, the parties filed their Joint Motion to Transfer Venue. In their Motion, the parties urge the Court to transfer this case to the United States District Court for the Northern

District of Illinois because "a related action, against different Defendants—*Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12-cv-04069 (N.D. Ill.)—presenting similar factual and legal issues" is presently pending in that district. D.E. 61 at 2. The parties also state that a third related action, *Vigus v. Caribbean Cruise Line, Inc.*, 12-cv-01834 (E.D. Mo.), is pending in the United States District Court for the Eastern District of Missouri and that its parties also intend to move for transfer to the Northern District of Illinois. *Id.* According to the parties, their ultimate goal is to consolidate these three cases "to avoid duplicative litigation, to further the convenience of the parties and witnesses, and to best serve the interests fo justice." *Id.*

In support of their Motion to Transfer Venue, the parties direct the Court to the *Birchmeier* complaint. *See* D.E. 61-1. In that Complaint, the *Birchmeier* Plaintiffs allege violations of the TCPA against multiple defendants: Caribbean Cruise Line, Inc. ("Caribbean Cruise Line"), Economic Strategy Group, Economic Strategy Group, Inc., and Economic Strategy LLC (together with Economic Strategy Group and Economic Strategy Group, Inc., the "Economic Strategy Group Companies"). *See id.*

The Complaint in this case and the *Birchmeier* Complaint involve significant crossover and intertwining between the two cases. First, both complaints allege the same scheme. More specifically, both complaints aver that the defendants in the respective cases engaged in robo-calling and that call recipients were asked by a caller representing himself to be a part of Political Opinions of America ("POA") to take a political survey, in exchange for which the call recipient would receive a free cruise from Caribbean Cruise Lines. *Compare* D.E. 32 at ¶¶ 15, 25 *and* D.E. 61-1 at ¶ 17. No free cruises were forthcoming, however. *Compare* D.E. 32 at ¶ 25 *and* D.E. 61-1 at ¶ 14. Instead, both complaints assert, the purported survey calls were a "front" for the caller to sell cruise and other

vacation products to the call recipient.  *Compare* D.E. 32 at ¶ 15 *and* D.E. 61-1 at ¶ 14.

Second, while the two cases name different defendants as parties, based on the allegations in the complaints, it is clear that all of the defendants in both of the cases are related to each other. Among other examples of this, *Wright* Defendant Berkley is prominently mentioned in the *Birchmeier* complaint as well.  Specifically, the *Birchmeier* complaint identifies Berkley and alleges that, in order to receive a "free" cruise, call recipients are required to attend a presentation on the sale of independent vacation ownership resorts such as Vacation Village, a trademark owned by Berkley. *See* D.E. 61-1 at ¶¶ 15, 22.  Similarly, the *Wright* Complaint alleges that Berkley "is in the business of selling, developing, managing and promoting vacation timeshares, along with other travel products such as cruise trips," D.E. 32 at ¶ 10, and that, after answer political questions, Wright was transferred to an operator who represented himself to be from Caribbean Cruise Lines, D.E. 32 at ¶ 25.  Indeed, the "free" cruises offered in both cases are from Caribbean Cruise Lines.

Finally, both cases seek primarily to press nationwide class actions against the respective defendants for violations of the TCPA, stemming from the conduct previously described.  Thus, *Wright* and *Birchmeier* involve the same alleged scheme, the same entities who allegedly participated in the scheme, and essentially the same questions of law and fact. With this background in mind, the Court now considers the parties' Joint Motion.

## *II.  Discussion*

The parties seek to transfer venue to the Northern District of Illinois.  The transfer statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or divisions where it might have been brought."  The proponent of a transfer of venue bears the burden of demonstrating

entitlement.  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

Courts employ a two-step process to analyze whether a motion for transfer should be granted. *Precision Fitness Equip., Inc. v. Nautilus, Inc.*, 2008 WL 2262052, *1 (S.D. Fla. May 30, 2008) (citing *Thermal Techs., Inc. v. Dade Serv. Corp.*, 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003); *Jewelmasters, Inc. v. May Dep't Stores*, 840 F. Supp. 893, 894-95 (S.D. Fla. 1993) (citing *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19 (1960))).  First, the court must assess whether the action could have been brought in the venue to which transfer is sought.  *Id.*  Second, the court determines whether convenience and the interest of justice "require transfer to the requested forum." *Id.*  Courts have broad discretion in determining whether a case should be transferred under this provision. *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1275 (S.D. Fla. 2011); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253-54 (1981) ("District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*") (citation omitted)).

An action "might have been brought" in any court that has subject matter jurisdiction, where venue is proper and where the defendant is amenable to process issuing out of the transferee court. *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (citing 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3845 (1976)).  Here, all parties agree that this case "might have been brought" in either the Southern District of Florida or the Northern District of Illinois.  *See* D.E. 61 at 5.

This Court agrees.  First, because this case involves the TCPA, the Northern District of Illinois, like this Court, enjoys subject matter jurisdiction under 28 U.S.C. § 1331.  Second, Plaintiff and Defendants agree that the Northern District could appropriately exercise personal jurisdiction

over them. *See* D.E. 61 at 5. Finally, under 28 U.S.C. § 1391, as evidenced by the allegations contained in *Birchmeier*, the Northern District of Illinois is an appropriate venue in this case, which shares much of its factual background with *Birchmeier,* because a substantial part of the conduct giving rise to the claims is alleged to have occurred in that district.

Therefore, the Court focuses its analysis on the second venue-transfer inquiry: convenience and interest of justice. In so doing, the Court takes into consideration the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Motorola Mobility, Inc.*, 804 F. Supp. 2d at 1275-76 (quoting *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002) and citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

In this case, the last factor — trial efficiency and the interests of justice — substantially drive the analysis. Therefore, the Court begins with it. Both parties desire to seek consolidation of this case with *Birchmeier* and *Vigus*. According to the parties, they will realize substantial economies by handling these three related TCPA matters as a single case. While this Court does not opine on the propriety of consolidating the instant case with *Birchmeier* and *Vigus*, the Court does note that consolidation in this case can occur only if all three cases are handled in the same district. Thus, transferring this case to the Northern District of Illinois promotes one of the purposes of the federal transfer statute, which was enacted, in part, to avoid "unnecessary inconvenience and expense to

parties, witnesses, and the public." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 21 (1960).

Transfer also furthers the interests of judicial economy and avoids the possibility of inconsistent resolutions of related cases. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Id.* at 26. Indeed, other judges in this district have recognized that "the most compelling reason for transfer of [a] case is that there are ongoing related proceedings pending [in the transferee court] . . . ." *SOC-USA, LLC v. Office Depot, Inc.*, 2009 WL 2365863, at *3 (S.D. Fla. July 30, 2009).

On balance, the other factors also weigh in favor of transfer or are neutral. With respect to the weight accorded a plaintiff's choice of forum, as a general rule, a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted). Here, however, both Plaintiff and Defendants seek to transfer this case; "the fact that the plaintiff is requesting the transfer can be considered as one factor in favor of allowing a change of venue." *Meterlogic, Inc.*, 185 F. Supp. 2d at 1300.

Turning to the location where the operative facts occurred, it is currently unclear where the that might be. Although both Berkley and Vacation Ownership are Florida corporations, each denies having placed the calls at issue. *See* D.E. 43 at ¶ 13; D.E. 44 at 11-13. But even if the conduct alleged did happen in Florida, Plaintiff argues that consumers nationwide were injured by the phone calls at issue. Where a case has a nationwide scope that "'does not establish a locus of facts in any particular forum,' . . . this factor weighs neutrally in the case." *FTC v. Direct Benefits Group, LLC*, 2012 WL 3715191 (M.D. Fla. Aug. 7, 2012) *report and recommendation adopted*, 2012 WL

3714089 (M.D. Fla. Aug. 28, 2012) (quoting *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier*, 761 F. Supp. 2d 1322, 1329 (M.D. Fla. 2010)).

Next, the Court considers the location of relevant documents and the access to sources of proof. Although many relevant documents may be located at Defendants' business locations in Florida, the parties point out in their Motion to Transfer that "all discovery documents produced to date have been electronically transferred." D.E. 61 at 10. Moreover, significantly, they also observe that many documents Plaintiff currently seeks from Caribbean Cruise Lines and Vacation Ownership in this case "have already been produced in the Northern District, by [Caribbean Cruise Lines] to the *Birchmeier* Plaintiffs . . . ." *Id*; *see also SOC-USA, LLC v. Office Depot, Inc.*, 2009 WL 2365863, at *4 (S.D. Fla. July 30, 2009) (finding this factor to weigh in favor of transfer where parties in the transferee court were already in possession of evidence relevant to the claims and defenses in the action). With regard to the availability of process, the parties note that "there is no indication that [they] will be unable to obtain necessary documents and witnesses through the Northern District's compulsory process." D.E. 61 at 10. Thus, these factors weighs in favor of transfer.

As for the relative means of the parties, the Court agrees with the parties' position that if this case is consolidated with *Birchmeier* and *Vigus*, transfer will "ultimately preserve all parties' resources." D.E. 61 at 12. Furthermore, Plaintiff has agreed to depose Defendants' witnesses in Florida, regardless of transfer, and other discovery is conducted with equal ease from wherever a party may be located. In addition, the parties inform the Court that "both Wright's and Berkley's attorneys are located in the Northern District of Illinois," and Vacation Ownership's attorneys already represent Caribbean Cruise Lines in the *Birchmeier* action in the Northern District. *Id.* at 9. Finally, if this case is not transferred, the parties will face conducting separate and expensive

litigation and trials on, at bottom, the same factual and legal issues. Thus, from a financial standpoint, it appears that transfer will not increase—and will likely lessen—the parties' expenses.

With regard to the convenience of the witnesses, the parties acknowledge that Berkley, Caribbean Cruise Lines, and Vacation Ownership are Florida companies with employees who presumably reside in Florida. If this case is transferred, many of those employees may be required to testify in Illinois. As the parties observe, however, "[W]ithout the requested transfers, many of these witnesses will be required to testify in *both* Florida and Illinois." D.E. 61 at 8. Such duplicative testimony would not be "conducive to [the witnesses'] convenience or consistent with notions of judicial economy or efficiency." *SOC-USA, LLC v. Office Depot, Inc.*, 2009 WL 2365863, at *4 (S.D. Fla. July 30, 2009). In addition, as noted above, Plaintiff has agreed to depose all of Defendants' witnesses in Florida. Plus, the Northern District is a geographically central location; its accessibility is particularly significant considering that both Wright and the *Birchmeier* Plaintiffs seek to represent nationwide classes of consumers, and some of these consumers can be expected to be witnesses. *See In re Am. Online, Inc.*, 162 F. Supp. 2d 690, 691 (J.P.M.L. 2001) (finding transfer to the Northern District of Illinois appropriate where "i) all parties support[ed] selection of that district; and ii) the geographically central district [was] a convenient location for a litigation already nationwide in scope."). Thus, the convenience of the witnesses favors transfer, particularly where transfer is likely to lead to a single trial.

As for the two courts' familiarity with the law, both the Southern District of Florida and the Northern District of Illinois likely enjoy equal knowledge of the TCPA. The Court does note, however, that Wright's breach-of-contract claim is based on Florida law. While this district probably has the opportunity to apply Florida law more frequently than the Northern District of Illinois does,

the Northern District of Illinois is certainly more than capable of construing Florida law, and the breach-of-contract claim is not "the type of legal issue that demands a heightened level of expertise," anyway. *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1290 (S.D. Fla. 2012). Thus, this factor is the only one that weighs slightly against transfer.

After consideration of all of the transfer factors, the Court finds that the interest of justice favor transfer of this action to the Northern District of Illinois. Accordingly, the Court grants Defendants' Motion to Transfer Venue.

### IV.  Conclusion

For the foregoing reasons, the parties' Joint Motion to Transfer Venue [D.E. 61] is **GRANTED**.

1. **The Clerk of Court shall take all necessary actions to transfer this case immediately to the Northern District of Illinois for all further proceedings**.

2. In light of the transfer and the parties' articulated plans to seek consolidation of this action with *Birchmeier* and *Vigus* — an action that, if granted, will likely affect the scope of litigation strategy and any potential dispositive motions, the Court **DENIES without prejudice** Defendant's Motion to Dismiss Amended Complaint [D.E. 44].

3.  All other pending motions are **DENIED AS MOOT**.

4.  The Clerk of Court shall **CLOSE** this case.

**DONE and ORDERED** this 31st day of January 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:    The Honorable Barry S. Seltzer
           Counsel of Record